UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ISMOIL SAMADOV,
      Petitioner

v.                                           CIVIL NO. 4:CV-06-2353

(Judge Jones)

THOMAS HOGAN, WARDEN,
ET AL.,
      Respondents

## MEMORANDUM

December 12, 2006

### Background

Ismoil Samadov ("Petitioner"), a detainee of the Bureau of Immigration and Customs Enforcement ("ICE") presently confined at the York County Prison, York, Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The required filing fee has been paid. Petitioner is represented by counsel. Named as Respondents are Warden Thomas Hogan of the York County Prison, Field Office Director Thomas Decker of the ICE, Secretary Michael Chertoff of the Department of Homeland Security, and Attorney General Alberto Gonzalez.

Samadov describes himself as being a "national of Uzbekistan and an Independent Muslim." Doc. 1, ¶ 1. The Petitioner entered the United States in 1999

on an F-1 visa but was allegedly forced to discontinue his studies due to financial hardship. On May 30, 2002, the ICE commenced removal proceedings against Samadov on the grounds that he had violated the terms of his student visa. He was subsequently granted release on bond.

Eighteen (18) months later, the Petitioner was retaken into custody by the Department of Homeland Security pursuant to an extradition request by the Uzbekistan government. An April 28, 2004 advisory opinion by the United States State Department rejected the extradition request. On March 16, 2004, an Immigration Judge ("IJ") granted Petitioner's request for withholding of removal. The decision was affirmed on appeal by the Board of Immigration Appeals ("BIA"). However, the government's request to reopen Petitioner's case was granted by the BIA on December 10, 2004 and the matter was remanded to the IJ.

On August 2, 2005, Samadov was granted deferral of removal by the IJ. However, the IJ's decision also found that withholding of removal was not appropriate because there were reasonable grounds to believe that the Petitioner posed a threat to the security of the United States and that Samadov was not entitled to a new bond hearing.[1] A May 24, 2006 decision of the BIA upheld the grant of deferral of

---

[1] In essence, the Petitioner was found to be removable to a country other than Uzbekistan.

removal, and denied Petitioner's request for asylum and withholding of removal. Petitioner has appealed the BIA's final order of removal to the United states Court of Appeals for the Third Circuit. The petition for review is pending before the Court of Appeals, however, Samadov has not sought a stay of removal from the Third Circuit Court of Appeals.

The Petitioner has remained in continuous ICE custody since January, 2004. On September 13, 2006, the ICE issued a decision continuing Samadov's detention. Petitioner states that he submitted a request for supervised release to the ICE's Headquarters Post-order Detention Unit (HQPDU) on October 28, 2006. Samadov asserts that although more than thirty (30) days have elapsed since his submission, the HQPDU has not provided him with a written response.

His present petition does not challenge the legality of his deportation but, rather, his continued detention pending removal. Petitioner indicates that he has been subjected to a prolonged detention without any meaningful review. Samadov maintains that his indefinite detention in ICE custody while awaiting deportation violates international law and constitutes cruel and unusual punishment under the Eighth Amendment. He asks that this Court grant him immediate supervised release based on the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001).

**Discussion**

Detention, release, and removal of aliens ordered removed is governed by the provisions of 8 U.S.C. §1231. Under §1231(a), the Attorney General has ninety (90) days to remove an alien from the United States after his order of removal, during which time detention is mandatory.[2] At the conclusion of the ninety (90) day period, the alien may be held in continued detention, or may be released under continued supervision. 8 U.S.C. §§1231(a)(3) & (6).

In Zadvydas, the United States Supreme Court addressed the issue of whether §1231(a)(6) authorizes the Attorney General to detain a removable alien indefinitely beyond the ninety (90) day removal period or only for a period reasonably necessary to effectuate the alien's deportation. Reasoning that the indefinite detention of aliens "would raise serious constitutional concerns," the Court concluded that the statute

---

[2] Section 1231(a)(1)(B) provides:

The removal period begins to run on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. At the conclusion of the 90 day period, the alien may be held in continued detention, or may be released under continued supervision. 8 U.S.C. §§1231(a)(3) & (6).

4

"limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." Zadvydas, 533 U.S. at 689. Furthermore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. To establish uniformity in the federal courts, the Court recognized six (6) months as a "presumptively reasonable period of detention." Id. at 701.

The Supreme Court further directed that if the alien provides good reason to believe that there is no significant likelihood of deportation in the reasonably foreseeable future at the conclusion of the six (6) month period, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." Id. It stated that not every alien must be released after six (6) months; but, rather, an alien may still be detained beyond six (6) months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. The Zadvydas holding was limited to removable aliens. In Clark v. Martinez, 543 U.S. 371, 385 (2005), the Supreme Court extended Zadvydas to two Mariel Cubans who had been deemed inadmissible to the United States. Thus, Samadov is entitled to protection under Zadvydas regardless of whether he is a removable or an inadmissible alien.

In response to Zadvydas, the ICE adopted 8 C.F.R. §241.13. The regulation

"establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at §241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. §241.13(a). Specifically, an eligible alien may make a written request for release to the HQPDU, "asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1).

Within ten (10) business days of receipt of the request, the HQPDU must provide the alien a written response acknowledging receipt of his request and explaining the procedures that will be used to evaluate the request. 8 C.F.R. § 241.13(e)(1). The HQPDU may grant an interview to the alien if such an interview would "provide assistance in rendering a decision." 8 C.F.R. § 241.13 (e)(5). The factors that the HQPDU must consider include:

> the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, the views of the Department of State regarding the prospects for removal of aliens to

>the country or countries in question, and the receiving country's willingness to accept the alien into its territory.

8 C.F.R. § 241.13(f). The regulation further provides that the "HQPDU shall issue a written decision based on the administrative record, including any documentation provided by the alien, regarding the likelihood of removal and whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances. The HQPDU shall provide the decision to the alien, with a copy to counsel of record, by regular mail." 8 C.F.R. § 241.13(g).

Samadov alleges that he has challenged his continued detention by filing a request for release with the HQPDU which has gone unanswered. Consequently, the Respondents are instructed, in accordance with the directive of the Attorney General, to treat, as of this date, Samadov's present petition for a writ of habeas corpus under §2241 and accompanying exhibits (doc. 3) as a request for release under 8 C.F.R. §241.1. See Zhang v. United Sates Attorney General, Civil No. 3:CV-02-336 slip op. (M.D. Pa. March 11, 2002) (Conaboy, J.); Singh v. INS, Civil No. 1:CV-01-1820, slip op. (M.D. Pa. Oct. 2, 2001)(Rambo, J.). The ICE shall respond to the request within thirty (30) days as mandated. Having referred the matter to the ICE for disposition under existing review procedures, the petition will be dismissed without prejudice. Samadov may reassert his present claims in a new § 2241 action, if the HQPDU fails to act on his request in a timely manner. An appropriate Judgment will

be entered.